IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-398-FL

| | |
|---|---|
| RONALD BROUSSARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter comes before the court on the parties' cross motions for judgment on the pleadings (DE 20, 28).[1] Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge William A. Webb issued a memorandum and recommendation ("M&R"), wherein it is recommended that the court deny plaintiff's motion, grant defendant's motion, and that the final decision by defendant be affirmed. Plaintiff timely filed objections to the M&R and the response time has expired. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation of the magistrate judge.

## BACKGROUND

Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on December 11, 2008, alleging disability beginning April 1, 2007. This application was denied initially, and hearing was held before an Administrative Law Judge ("ALJ") who determined that plaintiff was not disabled during the relevant time period in a decision dated

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin, Acting Commissioner of Social Security, has been named as defendant in this case in place of former Commissioner Michael J. Astrue.

September 3, 2010. The appeals council denied plaintiff's request for review on January 25, 2012, and plaintiff filed the instant action on July 2, 2012.

## DISCUSSION

A.  Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

To assist it in its review of the Commissioner's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the

2

record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform [his] past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff was not engaged in gainful employment since April 1, 2007. At step two, the ALJ found that plaintiff had the following severe impairments: 1) HIV+; 2) depressive disorder; 3) personality disorder; and 4) a history of substance abuse, in remission. However, at step three, the ALJ further determined that these impairments were not severe enough to meet or medically equal one of the impairments in the regulations. Prior to proceeding to step four, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work, specifically limited to simple one to two step instructions and work that does not involve climbing ladders or scaffolds, heights or balancing, and performed in an environment with no fumes, dust, odors, temperature or humidity extremes. The ALJ determined that plaintiff could not perform his past relevant work, but that plaintiff could adjust to the demands of other employment opportunities

3

existing in significant numbers in the national economy. Accordingly, the ALJ determined that plaintiff was not under a disability during the relevant time period.

B.  Analysis

Plaintiff raises several objections to the M&R, incorporating in part arguments raised in his brief in support of motion for judgment on the pleadings. Upon *de novo* review of plaintiff's objections, the court concludes that plaintiff's objections should be overruled.

1.  Function-by-function analysis

Plaintiff contends the ALJ erred because he did not conduct a function-by-function analysis, but merely stated that plaintiff is capable of light work and declared that his RFC analysis was consistent with the evidence. (Obj. 1-2). Pursuant to Social Security Ruling ("SSR") 96-8p, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," before the RFC may be expressed "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."

Although the Fourth Circuit does not appear to have addressed this question, this court previously has held that "SSR 96–8p does not require an ALJ to produce a detailed statement in writing—a true 'function-by-function' analysis," and that "a narrative discussion of a claimant's symptoms and medical source opinions is sufficient." Mascio v. Colvin, 2:11-CV-65-FL, 2013 WL 3321577 *3 (E.D.N.C. July 1, 2013) (citations omitted). Further, the "failure to articulate a function-by-function analysis is harmless error where the ALJ's ultimate finding is supported by substantial evidence in the record." Id. Here, the ALJ's narrative discussion of plaintiff's symptoms and medical source opinions is sufficient. (Tr. 29-33). And, as set forth in the M&R, substantial

4

evidence supported the ALJ's RFC assessment (M&R 4-6). Therefore, this objection is overruled.

  2.  Mental RFC Assessment

  Plaintiff argues that the ALJ erred because he failed to complete a Mental RFC Assessment form (SSA-4734-F4-SUP), and failed to obtain an expert medical opinion as to plaintiff's mental RFC. (Obj. 2-4). Contrary to these arguments, this court previously has observed "[n]othing in the regulations requires an ALJ to complete a [Mental RFC Assessment] form." Felton-Miller v. Astrue, 2:10-CV-5-FL, 2010 WL 4809028 *5 (E.D.N.C. Nov. 17, 2010) (20 C.F.R. § 404.1520a). Further, as noted in the M&R, the Fourth Circuit previously has held that an ALJ is "not required to obtain an expert medical opinion as to . . . RFC." Felton-Miller v. Astrue, 459 F. App'x 226, 231 (4th Cir. 2011).

  Plaintiff argues, nonetheless, that this case is distinguishable because his mental impairment was raised for the first time at the initial consideration level, whereas in Felton-Miller it was raised only at the ALJ hearing level. The court finds this distinction inapposite. In this case, as in Felton-Miller, the ALJ concluded that plaintiff's mental impairments were severe impairments at step two of the sequential process, and at step three the ALJ listed the four functional areas and analyzed in detail the impact of plaintiff's mental impairments on each of these areas. (Tr. 30). The ALJ discusses the medical records, including Dr. Fischetto's evaluation report, relevant to plaintiff's mental health treatment in assessing plaintiff's mental RFC. (Id.). Thus, any failure by the Commissioner to complete a mental RFC assessment form at the initial stages of the disability determination was rendered harmless by the ALJ's thorough discussion of plaintiff's mental RFC in his decision. Where the ALJ assessed plaintiff's mental RFC in accordance with the regulations,
5

failure to complete an RFC assessment form does not require remand. See Felton-Miller, 459 F. App'x at 231. Accordingly, this objection is overruled.

3. Discussion of mental limitations

Plaintiff argues that ALJ's RFC determination was erroneous because the only mental limitations noted in the RFC determination were that plaintiff is limited to "simple one to two step instructions," (Tr. 31), even though the ALJ found at step three of the sequential evaluation process that plaintiff had moderate limitations in social functioning and in concentration, persistence, and pace. (Obj. 4-5). The court finds no inconsistency with the ALJ's RFC determination and his earlier finding of moderate limitations in social functioning, concentration, persistence, and pace. Indeed, the ALJ expressly noted that the "limitations identified in 'paragraph B' criteria are not a residual functional capacity assessment," which instead "requires a more detailed assessment by itemizing various functions. . . ." (Tr. 31). The ALJ noted that the RFC determination that followed "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (Id.).

Plaintiff also faults the ALJ for failing to discuss plaintiff's anxiety disorder in the RFC determination. (Obj. 4, 5). As an initial matter, while plaintiff claims that the ALJ had a "complete disregard" of plaintiff's anxiety disorder, (Mot. J. Pl. at 10), this misrepresents the discussion of the ALJ. In fact, the ALJ discussed in detail the examination of Dr. Fischetto, noting that plaintiff was "observed as somewhat hyperactive, anxious and fidgety," he "complained of depression and anxiety," and was diagnosed with "anxiety disorder, not otherwise specified." (Tr. 30).

Further, where the ALJ's RFC finding with respect to mental limitations is supported by

6

substantial evidence, it is not the province of this court to re-weigh the evidence. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Here, as summarized in the M&R, substantial evidence supported the ALJ's determination that plaintiff is limited in his residual functional capacity to simple one to two step instructions, but in no other respect due to mental impairments. (See M&R 4-6). For example, in examinations in 2007, plaintiff was in several instances described as psychiatrically stable, with good insight and judgment. (Tr. 412, 489, 503, 506). In 2009, although Dr. Fischetto diagnosed plaintiff with mental disorders including anxiety disorder, he stated that plaintiff had no more than a slight limitation in functional assessment areas, except for a slight to moderate limitation in responding appropriately to work pressures in a usual work setting. (Tr. 641). Dr. Gold, a medical consultant, observed that plaintiff had no history of psychiatric treatment or medication, and that evidence in the file indicates no more than slight functional limitations. (Tr. 657). Accordingly, this objection is overruled.

   4.  Hypothetical question

Plaintiff argues that the ALJ erred by failing to include in the hypothetical question all of plaintiff's significant non-exertional limitations (Obj. 5). The hypothetical that was posed, however, asked the vocational expert to consider whether jobs exist in the national economy with plaintiff's age, education, work experience, and residual functional capacity. (Tr. 33-34). Accordingly, "[a]ll of the exertional and non-exertional limitations which the ALJ found to exist, were included in the hypothetical," and the ALJ was not required to include further limitations. Cannady v. Colvin, 5:11-CV-112-FL, 2013 WL 655134 *2 (E.D.N.C. Feb. 22, 2013) (quoting Mickles v. Shalala, 29 F.3d 918, 929 n. 7 (4th Cir. 1994) (Luttig, J. Concurring)).

7

5. The ALJ's Credibility Determination

Plaintiff argues the ALJ improperly determined his credibility with respect to her complaints of fatigue and weakness, given that the ALJ found plaintiff has impairments that could reasonably be expected to cause the alleged symptoms. "The determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). First, the ALJ must determine whether the plaintiff has a medical impairment "which could reasonably expected to produce the pain or other symptoms alleged." Id. (quoting 20 C.F.R. §§ 416.929(b) & 404.1529(b)). If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the plaintiff's pain or other symptoms, and the extent to which it affects is ability to work. Id. at 595. At the second step, the ALJ considers "not only the claimant's statements . . . but also 'all [of] the available evidence,' including . . . evidence of the claimant's daily activities, specific descriptions of the [symptom], and any medical treatment taken to alleviate it." Id. (quoting 20 C.F.R. §§ 416.929(c)(2), 404.1529(c)(2)). A plaintiff's allegations of pain and other symptoms "need not be accepted to the extent they are inconsistent with the available evidence," based on a consideration of the entire case record. Id.; see SSR 96-7p.

In this case, the ALJ considered plaintiff's subjective complaints associated with his impairments, and found first that plaintiff had medically determinable impairments which reasonably could be expected to cause alleged symptoms such as fatigue and weakness. (Tr. 32). At the second step, however, the ALJ found that plaintiff's statements as to the extent of his symptoms were not credible, reasoning, in pertinent part that plaintiff's "HIV condition is under excellent control with treatment, despite some recent bouts of diarrhea." (Id.) This determination was supported by

8

substantial evidence, as summarized by the ALJ in his decision:

> [Plaintiff] returned for treatment in September 2007 and the follow up visit of January 7, 2008 shows claimant's condition as stable (Exhibits 3F, 6F). On March 24, 2009, Dr. Jonathan Szenics conducted an evaluation of the claimant who admitted being currently asymptomatic of HIV with the exception of generalized lethargy. Claimant also reported three episodes of pneumonia within the past year (Exhibit 11F). In a report dated April 15, 2009 claimant's HIV status was noted as asymptomatic (Exhibit 13F). In a report dated June 23, 2009, Dr. Marcelo Gareca commented on the claimant's HIV status and reported that the claimant does not suffer from significant weakness but lately has been suffering from significant diarrhea occurring three times a day for thirty days. Otherwise, claimant was noted to have excellent control of his HIV impairment (Exhibit 17F). This is consistent with the post-hearing interrogatory completed by SSA medical expert Dr. Menio on July 12, 2010, who also indicated, based on the objective medical evidence of record, that the claimant's HIV is under excellent control and claimant has no restriction in his physical activity as a result of this impairment (Exhibit 22F).

(Tr. 29).

Plaintiff essentially asks the court to re-weigh this evidence in the record to come to a different conclusion than the ALJ. However, that is not the court's role. See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) ("[i]n reviewing and ALJ's finding for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary") (citing Craig, 76 F.3d at 589). Accordingly, plaintiff's objection is overruled.

    6. Representative Jobs

Plaintiff argues that the ALJ made an implicit finding that plaintiff can carry out detailed instructions, which is in conflict with the ALJ's RFC determination limiting plaintiff to performing "simple one to two step instructions" (Tr. 31), where the jobs given by the vocational expert in response to the ALJ's hypothetical are rated by the Dictionary of Occupational Titles ("DOT") as

9

requiring "Reasoning Level 2." (Obj. 6; Pl's Mot. J. Pl. at 13).

This court previously has rejected a similar argument, holding that "[t]he ALJ's limitation of plaintiff to 'simple routine repetitive tasks' is not inconsistent with jobs at the DOT reasoning development level 2." Burnette v. Astrue, 2:08-CV-009-FL, 2009 WL 863372 *5 (E.D.N.C. Mar. 24, 2009). Moreover, the vocational expert confirmed that his testimony in this case was consistent with the DOT, and no conflict between the vocational expert testimony and the DOT was apparent from the record. (Tr. 57-58). Cf. Fisher v. Barnhart, 181 F. App'x 359, 365 (4th Cir. 2006) (ALJ must elicit explanation from vocational expert where there is an "apparent unresolved conflict between vocational expert evidence and the Dictionary of Occupational Titles."). Accordingly, this objection is overruled.

## CONCLUSION

Upon *de novo* review of those portions of the M&R to which specific objections have been filed, and upon considered review of those portions of the M&R to which no such objection has been made, the court ADOPTS the recommendation of the magistrate judge, DENIES plaintiff's motion for judgment on the pleadings (DE 20), GRANTS defendant's motion for judgment on the pleadings (DE 28), and AFFIRMS the final decision by defendant. The clerk is DIRECTED to close this case.

SO ORDERED this the 24th day of September, 2013.

LOUISE W. FLANAGAN
United States District Judge